**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-06-110 (1) |
| | § | C.A. No. C-06-551 |
| RAY ALDO CRUZ, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE,**
**SET ASIDE, OR CORRECT SENTENCE AND**
**ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Ray Aldo Cruz's ("Cruz") motion to vacate his sentence under 28 U.S.C. § 2255. (D.E. 21.)[1]  Also before the Court is the government's answer and motion to dismiss Cruz's motion on the grounds of his waiver of § 2255 rights. (D.E. 25, 26.)  Cruz has filed a reply (D.E. 27), which the Court has also considered.

As discussed in detail herein, Cruz lists four grounds for relief in his motion.  His second, third and fourth claims challenge this Court's imposition of his sentence or allege ineffectiveness of his counsel at sentencing.  These three claims are subject to dismissal because he validly waived his right to file them.  His first claim, in which he asserts that he was denied effective assistance of counsel during the plea process, arguably falls outside the scope of his waiver.  As discussed herein, however, this claim fails on its merits.  For these reasons, the Court DENIES his § 2255 motion.  Additionally, the Court DENIES Cruz a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1] Docket entries refer to the criminal case, Cr. No. C-06-110.

1

## II. FACTS AND PROCEEDINGS

**A.     Summary of the Offense**[2]

On January 20, 2006, at approximately 6:00 p.m., a green 1997 Ford Explorer driven by Cruz arrived at a United States Border Patrol traffic checkpoint located south of Falfurrias, Texas. Cruz's wife and their three minor children were passengers in the vehicle. While the agents were conducting an immigration interview, a service canine alerted to the car for the presence of narcotics. Agents then asked Cruz if they could search the vehicle, and Cruz told them "yes."

Once in the secondary inspection area, the service canine alerted again to the gas tank of the vehicle. Inspection of the gas tank revealed an access panel on the top of the tank. Behind the access panel were twelve bundles wrapped in green and red cellophane. The bundles contained United States currency totaling $19,980 and a substance later determined to be cocaine, 91% purity, with a gross weight of 13.75 kilograms, a net weight of 12.03 kilograms.

Cruz was asked by Border Patrol agents if he wished to make a statement. He initially denied knowing anything about the cocaine, but later stated that he found the cocaine near the Rio Grande River and hid it in his vehicle. He said he was taking the cocaine to Austin to sell it. Cruz later admitted that this was not a plausible explanation, but stated that if he told the truth, he or his family could get hurt. He stated he was to be paid $5,000 for taking the cocaine to Austin, and that his wife did not know anything about the cocaine found in the vehicle. In a separate interview, his wife stated she had no knowledge of the cocaine in the vehicle. His wife was not charged in the case for lack of involvement and knowledge.

---

[2] The information in this section is derived from Paragraphs 4 through 10 of Cruz's Presentence Investigation Report.

**B.     Criminal Proceedings**

On February 16, 2006, Cruz was charged in a single-count indictment with knowingly and intentionally possessing with intent to distribute approximately 12 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (D.E. 4.) Cruz pleaded guilty pursuant to a written plea agreement. In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that he receive the maximum credit for acceptance of responsibility, and to recommend a sentence at the lowest end of the applicable guideline range. (D.E. 13 at ¶¶ 1-2.) The plea agreement contained a voluntary waiver of Cruz's right to appeal and to file a § 2255 motion:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. Defendant is aware that Title 18 U.S.C. §3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal <u>only</u> (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that Title 28, U.S.C. §2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 13 at ¶ 7) (emphasis in original). The agreement was signed by both Cruz and his counsel. (D.E. 13 at 5.)

During the rearraignment, the prosecutor outlined the plea agreements of Cruz and other defendants being rearraigned, including a statement that "[e]ach defendant is agreeing in this plea agreement that by signing this agreement they are agreeing to waive their rights to appeal, including rights under Title 28, Section 2255." (D.E. 23, Rearraignment Transcript ("R. Tr.") at 6.) After that summary was given, Cruz testified that he heard what was said, and that he did not have any

questions about the agreement. (R. Tr. at 6-7.) When shown the plea agreement, Cruz testified that he signed the agreement voluntarily after reading it, that he understood it, and that he had had an opportunity to fully discuss it with his counsel. (R. Tr. at 15.)

The Court questioned Cruz under oath at the rearraignment to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and, in particular, his right to file a § 2255 motion:

> THE COURT: Same question about the waiver of appeal. There is a provision in there about you waiving certain rights to appeal. Do you understand that's in there?
>
> MR. CRUZ: Yes, sir, I do.
>
> THE COURT: Including a motion under Section 2255?
>
> MR. CRUZ: Yes, sir.
>
> THE COURT: Did you discuss that provision with Mr. Berg before you signed the agreement?
>
> MR. CRUZ: Yes, sir.
>
> THE COURT: Do you feel like you understand it?
>
> MR. CRUZ: Yes, sir.

(R. Tr. at 16.) It is clear from the foregoing that Cruz's waiver was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR") and sentencing occurred on June 22, 2006. The Court sentenced Cruz to 120 months in the custody of the Bureau of Prisons, the mandatory statutory minimum for the offense, to be followed by a five-year supervised release term. (D.E. 18.) The Court also imposed a $100 special assessment. (D.E. 18.) Judgment was entered on June 28, 2006. (D.E. 18.)

Consistent with his waiver of appellate rights, Cruz did not appeal. In spite of his waiver, however, he filed the instant § 2255 motion on December 11, 2006. It is timely.

### III.  MOVANT'S ALLEGATIONS

Cruz asserts four grounds for relief in his § 2255 motion.  First, he argues that he was denied the effective assistance of counsel because his counsel advised him that, if he pleaded guilty, he would receive a "three point decrease in his sentence and receive a sentence from 87 to 108 months." He claims that this advice was deficient and resulted in an involuntary plea and involuntary waiver of appellate rights and § 2255 rights.

Cruz's remaining grounds for relief are all grounds that the Court erred in imposing sentence. Specifically, in his second claim he argues that the Court erred in not awarding him safety valve relief.[3]  In his third claim, he argues that he should have been given a downward departure of "not more than 4 levels" pursuant to U.S.S.G. § 5K3.1, which provides that, "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."  U.S.S.G. § 5K3.1.  Fourth and finally, Cruz argues that he should have received a downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1, and asks that the downward departure be given at this time.   Although not listed as a separate ground, he also alleges that his attorney was ineffective for failing to raise these challenges to his sentence.  (D.E. 21 at 6; see also Cruz's reply, D.E. 27.)

In its response and motion to dismiss, the government moves for dismissal on the grounds that Cruz's motion is barred by his waiver of § 2255 rights. (D.E. 25 at 1, 11-13.)  It also argues that his ineffective assistance claim is subject to dismissal on its merits.  (D.E. 25 at 14-17.)

In his reply, Cruz reiterates that his counsel was ineffective for not seeking safety valve relief

---

[3] The so-called "safety valve" is set forth at 18 U.S.C. § 3553(f) and in the Guidelines at § 5C1.2. It allows a sentencing judge to impose a sentence below the statutory mandatory minimum for a defendant who meets certain requirements specified in the statute.

5

or a reduction in his sentence for substantial assistance. He also argues that his § 2255 motion is not barred by his waiver because he has asserted a claim of ineffective assistance in the plea process.

### IV.  ANALYSIS

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

**B.     Cruz's Waiver of § 2255 Rights**

The Court does not reach the merits of most of Cruz's claims because they fall within the scope of his waiver. See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights). His claims that the Court erred in sentencing him clearly fall within the scope of his waiver and are thus barred.[4] Similarly, to the extent those claims can be construed as ones that his counsel was ineffective for failing to challenge the Court's failure to give the various downward departures or reductions in sentence now requested by Cruz, those claims also fall within the scope of his waiver. United States v. White, 307 F.3d 336,

---

[4] In any event, claims that the Court misapplied the guidelines are not cognizable on collateral review. United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999).

343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself").

In his first claim, however, Cruz argues that his counsel misadvised him concerning his likely sentence, and thus, that his plea was not voluntary. This claim arguably falls outside the scope of his waiver, because it is a direct challenge to the validity of his plea, and hence his waiver. See White, 307 F.3d at 343-44. Thus, the Court turns to the merits of this claim.

**C.    Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."). When viewing the record as a whole, it is clear that Cruz cannot show prejudice and thus is not entitled to relief as to his claim.

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Cruz must show that, absence his counsel's deficiencies, he would

have proceeded to trial. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). This is a showing that cannot be met here. The rearraignment transcript clearly establishes that Cruz's decision to plead guilty was his own and that it was entirely voluntary.

At his rearraignment, Cruz testified that he had received a copy of the indictment, that he read it and understood it, and that he discussed the charges with his lawyer. (R. Tr. at 11.) He also testified that he was satisfied with the services rendered by his attorney. (R. Tr. at 11-12.) As noted supra at pages 3-4, Cruz also testified that he had signed his plea agreement voluntarily after reading it and fully discussing it with his lawyer, and that he understood it and specifically understood the waivers therein. (R. Tr. at 15-16.) Notably, he testified that no one had offered him anything to get him to plead guilty other than what was contained in the plea agreement. (R. Tr. At 15-16.)

The Court informed Cruz of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights. (R. Tr. at 21-22). Consistent with Rule 11, Fed. R. Crim. P., the Court explained to Cruz the maximum punishment that he might receive. Specifically, the Court informed him that he faced a mandatory minimum sentence of ten years, but that he could receive a sentence of life in prison. (R. Tr. at 18.) The Court also informed him that there was a mandatory $100 special assessment, and a mandatory term of five years of supervised release, and that he could be fined up to four million dollars. (R. Tr. at 18.) Cruz testified that he understood. (R. Tr. at 18.)

The Court explained how the sentencing guidelines work generally, and explained that the Court must carefully consider the advisory guideline range when determining his sentence. (R. Tr.

at 20-21.) The Court also specifically admonished that if the sentence was worse that what he was expecting, he would not be allowed to withdraw his guilty plea. (R. Tr. at 21.) Again, Cruz testified that he understood. (R. Tr. at 21.)

Cruz's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Put simply, Cruz's sworn statements preclude the relief he seeks here. He knew of the potential punishment he faced, including the ten-year mandatory minimum, which is the sentence he received. Moreover, he testified that his decision to plead guilty was voluntary and that no one had promised him anything to induce his guilty plea.

Furthermore, at sentencing, after having seen the PSR and his guideline range, Cruz affirmed that he had reviewed the PSR and discussed it with his counsel, and that there were no objections that he wanted filed. (S. Tr. at 2-3.) This fact further undermines his claim that his attorney gave him incorrect advice concerning his likely sentence.

Cruz does not seem to be claiming that his counsel actually ***promised*** him he would receive a specific sentence; rather, he seems to be claiming that his counsel merely underestimated his sentencing exposure. Nonetheless, to the extent he is claiming that such a promise was made, he may proceed on such a claim only under narrow circumstances. See United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998). Specifically, a defendant may seek habeas relief on the basis of alleged promises, even though inconsistent with his representations in open court, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise. 132 F.3d at 1110. A defendant

9

is entitled to an evidentiary hearing on the issue if he can produce evidence showing the merit of his allegations, typically in the form of an affidavit from a reliable third party. Id. Cruz has not alleged any facts about the identity of any witnesses to any promise, and has not provided any evidence showing the merit of any alleged promise. Thus, he would be unable to obtain relief under the Cervantes exception.

In short, Cruz cannot overcome his testimony at the rearraignment – which clearly established a knowing and voluntary plea – to now show that he would have insisted on going to trial but for counsel's performance. Thus, Cruz cannot prove the prejudice prong of the Strickland inquiry, and it is unnecessary to determine whether his counsel's performance was deficient. His claim of ineffective assistance in the plea process fails.

Because the Court concludes that Cruz's sole challenge to the validity of his plea agreement fails, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

**D.      Waiver of § 2255 Rights**

As noted, it is clear from the rearraignment that Cruz understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 16.) See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Again, Cruz's statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84. Those statements support the Court's conclusion that his wavier was knowing and voluntary. As noted supra at pages 6-7, Cruz's remaining claims clearly fall within the scope of that waiver.

In sum, while Cruz's ineffective assistance claim as to his plea is denied on the merits, his remaining allegations of errors by the Court at sentencing and ineffective assistance of counsel at sentencing fall within the scope of his waiver. Therefore, they are not properly before the Court. For these reasons, Cruz's § 2255 motion is DENIED in its entirety.

**E.     Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Cruz has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Cruz is not entitled to a COA as to either of his claims.  That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claim as to the plea.  Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of his remaining claims.

## V.  CONCLUSION

For the foregoing reasons, Cruz's motion to vacate pursuant to 28 U.S.C. § 2255 (D.E. 21) is DENIED.  Additionally, Cruz is DENIED a Certificate of Appealability.

It is so ORDERED.

Signed this 29th day of May, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE